UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

Jonathon M. DeWald, On Behalf of Himself )
And All Others Similarly Situated,           )
                                             )
          Plaintiffs,                        )
                                             )     1:09-cv-00745-SEB-DML
     vs.                                     )
                                             )
Zimmer Holdings, Inc., et. al.,              )
                                             )
          Defendants.

**ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT AND FOR LEAVE TO AMEND THE AMENDED COMPLAINT**

This cause is before the Court on Plaintiff's motion to alter or amend the judgment and for leave to file an amended complaint. [Docket No. 98]. Specifically, Plaintiff requests that we alter the Court's judgment to provide that dismissal was without prejudice. Plaintiff also requests that the Court grant him leave to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15(a) and in that regard has submitted a proposed Second Amended Complaint for Violations of the Employee Retirement Income Security Act ("SAC").[1] Plaintiff asserts that the new allegations in

---

[1] In our December 23, 2011 dismissal order [Docket No. 95], we granted Defendants' motion to dismiss "without prejudice" but also entered final judgment in favor of Defendants. Plaintiff now asks that we clarify this inconsistency. Defendants do not oppose Plaintiff's request but oppose Plaintiff's request to amend on futility grounds. As explicated below, we agree that Plaintiff's SAC fails state a claim against Defendants, meaning that granting him leave to amend would be futile. In light of this decision, we see no need to correct our prior judgment and thus we deny Plaintiff's request as moot.

the SAC address those deficiencies identified in the Court's order dismissing a previous version of his complaint. For the reasons detailed herein, Plaintiff's motion is DENIED.

**Background**

Plaintiff filed his First Amended Complaint ("FAC") on January 23, 2009 alleging that Defendants breached their fiduciary duties under ERISA by failing to act solely in the interest of the Plan and its participants and beneficiaries and by failing to exercise the required skill, care, prudence and diligence in permitting the Plan to acquire and hold Zimmer common stock through the Zimmer Common Stock Fund (the "Zimmer Stock Fund") at a time when they knew or should have known that the Zimmer Stock Fund was an imprudent investment.[2]

On December 23, 2011, the Court granted Defendants' motion to dismiss. [Docket No. 95]. We based our decision in large part on the Seventh Circuit's decision in Howell v. Motorola, Inc., 633 F.3d 552 (7th Cir. 2011), a decision handed down while Defendants' motion to dismiss was pending before this Court.[3]

---

[2] A securities fraud action was also filed against many of the same defendants based on virtually identical facts. We dismissed the Consolidated Amended Complaint in the securities action for failure to state a claim, Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc., 673 F. Supp. 2d 718 (S.D. Ind. 2009) ("Zimmer I"), and denied the plaintiffs' motion for leave to amend based on futility grounds, Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc., Case No. 1:08-cv-01041-SEB-DML, 2011 U.S. Dist. LEXIS 9253 (S.D. Ind. Jan. 28, 2011)("Zimmer II"). The Seventh Circuit affirmed this dismissal on May 21, 2012, Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc., 679 F.3d 952 (7th Cir. 2012), agreeing that the plaintiffs' complaint did not establish the requisite inference of scienter on the part of any defendant.

[3] In light of the Howell decision, we allowed the parties to submit supplemental briefing
(continued...)

The factual background underlying this case was detailed in our order dismissing the FAC; thus, we provide only a brief recap of the relevant facts here.  We discuss in greater depth, however, the new allegations in the SAC that were not previously included in the FAC.

The FAC was brought against Zimmer, certain "Director Defendants," the Benefits Committee, the Administrative Committee, Renee Rogers (Zimmer's Vice President of Global Resources), James Crines (Executive Vice President of Finance and Chief Financial Officer), and John Does 1-20.  That pleading embodied claims related to certain failures of fiduciary duty regarding the management of the Zimmer Holdings Inc. Savings and Investment Program (the "Plan").  The Plan included twenty-eight investment options available to Plan participants, one of which was the opportunity to invest in the Zimmer Stock Fund.  The Summary Plan Document described the non-diversified nature of the Zimmer Stock Fund and stated that "the principal of the fund is not guaranteed and would normally fluctuate more than that of a diversified fund."  The Plan provided for the establishment of the Zimmer Stock Fund but did not require that the Fund remain an investment option to Plan participants.

Plaintiff alleges that Defendants continued to allow participants of the Plan to invest in the Zimmer Stock Fund after it was no longer prudent to do so.  Specifically, Plaintiff's FAC allegations focus on two areas of ongoing trouble for the company –

---

³(...continued)
regarding the effect if any, of that decision on our analysis in this case.

quality problems related to the manufacturing of its orthopaedic surgical products ("OSPs") and safety concerns related to the company's Durom Femoral Component hip resurfacing system (the "Durom Cup").

Plaintiff alleges that Zimmer began to receive complaints related to problems with the Durom Cup on October 5, 2007.  Additional complaints from Durom Cup distributors continued through the end of 2007 and into early 2008.  In addition, Dr. Lawrence Dorr, a renowned orthopaedic surgeon and Zimmer consultant, began informing Zimmer of problems related to the Durom Cup in early 2008.  Plaintiff alleges that Zimmer ignored these complaints and, instead, blamed the injuries related to the Durom Cup on problems with surgical technique.

As a result of Zimmer's perceived lack of responsiveness, Dr. Dorr sent a memo to the American Association of Hip and Knee Surgeons on April 22, 2008, warning other surgeons of the high failure rate Dr. Dorr had experienced with the Durom Cup.  As problems with the Durom Cup became more widely publicized in April and May 2008, Defendants formed a "crisis team" to deal with the matter that worked closely with Defendants Crines and Dvorak.  This crisis team allegedly was tasked with searching for evidence to support Zimmer's contention that  the failure rate of the Durom Cup was attributable to deficient surgical technique.

On January 29, 2008, Zimmer issued a press release announcing its financial results for the fourth quarter of 2007.  During a conference call conducted later that day, Defendant Dvorak provided a rosy outlook for 2008, anticipating growth in net sales of

4

10-11% and adjusted earnings per share of $4.20 to $4.25. The next day, Zimmer's stock price predictably rose as a result of these predictions. No mention was made of the complaints the company had received related to its Durom Cup. Indeed, Defendant Crines stated that Zimmer anticipated "hip resurfacing accelerating growth in the U.S. hip market."

On January 30, 2008, Zimmer made a presentation at the Wachovia Healthcare Conference where Defendant Crines repeated its positive financial guidance. Defendant Crines stated that some of the feedback the company was receiving regarding the Durom Cup indicated that it was "a bit challenging to implant." He acknowledged that "there are some things [Zimmer] can do in the way of surgical technique training that ought to help us with that level of penetration."

In March of 2008, Defendant Crines acknowledged that the company faced some "challenges and opportunities" relating to its hip portfolio but did not alter the previously issued financial guidance. In April, Zimmer issued a press release announcing certain actions taken "to improve quality systems at its Dover, Ohio facility," which manufactures the company's OSPs. The company acknowledged voluntary product recalls of certain of its OSPs and the temporary suspension of some of the products manufactured at the Dover facilities. The press release indicated that Zimmer expected these actions to negatively impact its OSP revenues by $70 to $80 million.

In late April 2008, despite the problems that the company was experiencing with its OSPs and the Durom Cup, the company conducted a conference call during which

5

Defendant Dvorak again projected the same positive earnings guidance previously issued by the company. Defendant Dvorak explained that Zimmer was maintaining the guidance despite "the negative financial impact we'll experience as a result of lost sales, inventory losses, and remediation costs in our OSP business," because the company also anticipated a positive financial impact from a number of "other planned actions." Following these statements, Zimmer's stock price declined by 4%.

On July 22, 2008, Zimmer issued a press release announcing that it was temporarily suspending the marketing and distribution of its Durom Cup. The press release stated that it planned to update labeling to provide better surgical instruction and to implement a surgical training program. It also stated that the company had no evidence of any defect in the materials, manufacture, or design of the Durom Cup. The press release revised the company's previously issued earnings guidance downward to $4.05 to $4.10, from $4.20 to $4.25. Following these announcements, Zimmer's stock price declined by 7%.

Finally, in October, 2008, the company issued a press release announcing that a $47.5 million dollar fund was being established to deal with claims related to the Durom Cup. Following this statement, Zimmer's stock price declined by 13.5%.

The vast majority of these new allegations in the SAC pertain to two issues: 1) a fleshing out of the allegations relating to quality problems and the recalls of Zimmer's OSPs manufactured at its Dover, Ohio facility; and 2) new allegations relating to Defendants' knowledge of the problems with the Durom Cup and the OSPs. Most of

these allegations are set out in the complaint in the securities action, which we detail below.[4]

### Quality Issues At Zimmer's Dover, Ohio Facility

The SAC alleges that Zimmer's OSPs were a major revenue source for Zimmer such that any quality issues related to the products would "seriously impact" Zimmer's reputation and success in that market. Seventy to eighty percent of Zimmer's OSPs were manufactured at the facility in Dover, Ohio, which Plaintiff alleges had serious quality issues arising from its systems that were "10 to 15 years out of date."

Beginning in October 2007, certain OSPs were back ordered and, as early as November 2007, the company began to receive quality complaints about its Pulsavac Plus, one of Zimmer's "highest volume" OSPs. The Pulvasac Plus recall was completed by December 18, 2007, and on January 7, 2008 Zimmer halted production and ceased distribution of Pulsavac 2 and 3. By January 24, 2008, Zimmer had recalled at least five products, including 800,000 Pulsavac products.

The recall of the Pulsavac Plus prompted an FDA inspection beginning on January 7, 2008. In response to the FDA investigation, Zimmer assembled a team to "coach" employees on what to say to the FDA inspector. Defendant Dvorak also hired a specialist known for interfacing with the FDA and helping companies avoid warning letters. The

---

[4]The SAC also added as Defendants the following members of the Benefits Committee during the Class Period: Cheryl Blanchard, Sheryl Conley, Derek Davis, Elizabeth Keiley, Heather Kidwell, Michael Norris, Eric Record, and Richard Stair.

FDA inspector communicated with Zimmer's Director of Quality Assurance and Regulatory Affairs throughout the inspection that generated certain FDA 483 safety and quality observations.[5] In the report following the investigation, the FDA cited Zimmer for several defective products and an inadequate system for responding to information regarding such defects. Following recommendations from Zimmer's quality department, Defendant Dvorak agreed to shut down the Dover facility and, thus, production of OSPs, in January 2008.

### Allegations Regarding Defendants' Knowledge

Plaintiff has included new allegations regarding how certain Defendants, primarily Defendant Dvorak, knew or should have known of the problems related to the Durom Cup and OSPs. Specifically, Plaintiff alleges that Defendants Dvorak, Crines and others were aware of changes in sales of the OSPs and Durom Cup based on their having received a report detailing U.S. sales information on these products each day. Furthermore, Defendant Dvorak directly oversaw the Dover facility, which included regular updates on the FDA investigation following the recall of the Pulsavac Plus.

Plaintiff alleges that based on his direct oversight over the Dover facility

---

[5]The Seventh Circuit explained the significance of a "438" as follows in the securities action:

In industry jargon, a "483" is an observation by an [FDA] inspector, providing information about "significant objectionable conditions" (not serious enough to merit a warning or any formal action by the agency) that the inspector believes will be useful to the company. The shorthand "483" derives from the fact that these observations are recorded on the FDA's Form 483.

679 F.3d at 955.

Defendant Dvorak well knew about the serious quality issues existing at the facility. Indeed, Dvorak allegedly had expected to receive warning letters from the FDA, which is what prompted him to hire a specialist to try to head off the issuance of such warnings letters. The individuals who made the decision to recall the Pulsavac Plus reported directly to Dvorak and Dvorak was updated at least every other day regarding the FDA inspection, including receipt of live feeds from the FDA inspector directly to his computer. It was Dvorak who ultimately decided to shut down the facility based on the FDA inspections.

## Legal Analysis

### I. Legal Standard

Plaintiff requests leave to amend his original complaint, pursuant to Fed. R. Civ. P. 15. Although such leave is generally freely given, undue delay, bad faith, dilatory motives on the part of the movant, undue prejudice to the opposing party or futility of amendment may justify denial of such leave. See Fed. R. Civ. P. 15; Airborne Beepers & Video, Inc. v. AT&T Mobility LLC, 499 F.3d 663, 666 (7th Cir. 2007). Defendants maintain that denial is appropriate here because the filing of the SAC would be futile given its failures to cure the defects identified in the prior version of the complaint, rendering it unable to survive a second motion to dismiss.

The standard for determining if a proposed amendment would be futile turns on whether the proposed amendment cures the deficiencies of the prior pleading or whether it could survive a second motion to dismiss. Perkins v. Silverstein, 939 F.2d 463, 472

(7th Cir. 1991). To survive a motion to dismiss, Plaintiff's allegations for breaches of fiduciary duties and ERISA violations must comply with the requirements of Federal Rule of Civil Procedure 8(a)(2), which straightforwardly mandates "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" However, "a complaint must [also] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929, (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. 544, 563, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage], the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")). We treat all well-pleaded factual allegations as true, and construe all inferences that reasonably may be drawn from those facts in the light most favorable to Plaintiff. Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

In our December 23rd entry, we held that Plaintiff had failed to allege a breach of Defendants' duty of imprudence (Count I) because "the stock declines . . . were insufficient as the basis for a finding that Defendants acted imprudently, given the

opportunity over several months time when each of the Plan participants could have diverted his/her contributions to any of the twenty-eight other investment options described in the Summary Plan Document." Plaintiff's failure to disclose claim (Count II) failed because it was barred by the ERISA § 404(c) safe harbor, an affirmative defense that Plaintiff had put in play by anticipating it in their Amended Complaint. Plaintiff's other claims for failure to monitor (Count III), conflict of interest (Count V), co-fiduciary and Zimmer's liability (Count VI) also failed because they were derivative of the other counts dismissed by the Court. Plaintiff now maintains that the SAC cures these deficiencies as to each count. For the reasons explicated below, we must again disagree.

## I. Discussion

### A. Count I: Imprudence

As noted above, we previously dismissed Plaintiff's breach of the duty of prudence claim because the allegations in the FAC would not support a finding that the Defendants should have been tipped off to the fact that Zimmer's stock had become "so risky or worthless" that it warranted removal of the stock as a Plan investment option. In reaching this conclusion, we noted the relatively modest stock price declines as well as the ample opportunity over several months when each of the Plan participants could have diverted their contributions away from the Zimmer Stock Fund.

Defendants contend that Plaintiff's SAC does nothing to cure the defects of its

11

imprudence claim, and Plaintiff does not dispute this contention in his reply brief.[6] Indeed, the SAC repeats the same allegations regarding the stock price declines that we previously deemed insufficient to establish that Zimmer stock had become so risky or worthless that it should have been removed as an investment plan option. Thus, to the extent that Plaintiff intended to cure the deficiencies of his imprudence claim, he has failed. Accordingly, the amendment would be futile.

### B. Count II: Failure to Disclose

The focus of both parties' briefs is the changes between the FAC and the SAC concerning Plaintiff's failure to disclose claim. In our order evaluating the sufficiency of the allegations in the FAC, we held that Plaintiff's failure to disclose claim was barred by the Section 404(c) safe harbor.[7] In so holding, we determined that the Plan documents

---

[6] Plaintiff, in order to preserve this issue for appeal, does take the position that his prior complaint properly pled a claim for breach of the fiduciary duty.

[7] Section 404(c) provides a safe harbor from liability for fiduciaries of self-directed accounts that provides as follows:

(c) Control over assets by participant or beneficiary

(1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)—

(i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control, except that this clause shall not apply in

(continued...)

provided participants with sufficient information regarding the investment objectives and risks associated with the Zimmer Stock Fund to allow the participants to exercise "independent control in fact," which they did, given our determination that Plaintiff failed to allege that Defendants had "concealed material non-public facts regarding the investment." Thus, we noted that the FAC lacked allegations establishing knowledge of falsity on the part of any individual Defendant and that the various non-disclosures regarding Zimmer's quality issues with its OSPs and its Durom Cup did "not rise to the level such that an omission of such information to Plan participants constitutes a violation of ERISA."

We begin by addressing Plaintiff's contention that he has cured the deficiencies noted previously by the Court by removing any reference to the 404(c) safe harbor from the SAC. Plaintiff theorizes that, because the allegations no longer anticipate the defense, it is no longer in play and thus cannot serve as a bar to the failure to disclose claim. Unfortunately for Plaintiff, our conclusion that the 404(c) safe harbor applied to the previous allegations in the FAC necessarily also meant that generally speaking those

---

[7](...continued)
connection with such participant or beneficiary for any blackout period during which the ability of such participant or beneficiary to direct the investment of the assets in his or her account is suspended by a plan sponsor or fiduciary.

29 U.S.C. § 1104(c).

allegations failed to establish a failure to disclose claim pursuant to ERISA. This is because the disclosure duty required by the regulations relating to the safe harbor defense is equivalent to the duty of disclosure imposed by ERISA generally. Lingis v. Motorola, 649 F. Supp. 2d 861, 873 (N.D. Ill. ) *aff'd* Howell, 633 F.3d at 571-72. The Seventh Circuit has acknowledged that this interpretation makes it impossible for a defendant to both breach ERISA's fiduciary duty to disclose information and to take advantage of the 404(c)'s safe harbor. Thus, whether it was due to the operation of the 404(c) safe harbor or because no violation of ERISA generally was alleged, Plaintiff failed to allege a failure to disclose claim. An effort to remove any reference to the safe harbor in the SAC does not cure that pleading deficiency.

Setting aside the application of the 404(c) safe harbor, we must determine whether the SAC sufficiently alleges a failure to disclose on the part of any Defendant to constitute a violation of ERISA. "A violation of ERISA's disclosure requirement . . . requires evidence of either an intentionally misleading statement, or a material omission where the fiduciary's silence can be construed as misleading." 633 F. 3d at 571.

Plaintiff contends that the SAC cures the deficiencies identified by the Court because the SAC newly alleges that Defendants knew or should have known about: (1) quality issues existing at Zimmer's Dover, Ohio manufacturing facility as of January 29, 2008 (SAC ¶¶ 14-16; 22-29; 30-32); (2) numerous 483 observations issued by the Food and Drug Administration ("FDA") against Zimmer as well as the recall of five separate products (the Pulsavac Plus, Pulsavac 2, Pulsavac 3, Hemovac Infection Control Kits and

14

Hemovac Autotransfusion Systems) as of January 29, 2008 (SAC ¶¶ 33-40); and (3) Zimmer's problems with the Durom Cup (SAC ¶¶ 50-60). Plaintiff's theory is that Defendants' failure to disclose these issues and/or their potential to adversely affect the stock price of Zimmer stock constituted a violation of Defendants' fiduciary duty under ERISA.

Defendants rejoin that Defendants had no fiduciary obligation under ERISA to provide this information to participants in the Plan and in any event Plaintiff has failed to allege that the public statements were made with knowledge of their falsity. We find this rejoinder persuasive in both regards.

As in the FAC, Plaintiff's failure to disclose claim is based on Defendants' non-disclosure of information regarding quality problems with its OSPs and the Durom Cup. These are the subjects that we previously found closely analogous to to the non-disclosures in Howell (and, thus, non-actionable). In Howell, the Seventh Circuit ruled that the defendants' failure to disclose information relating to a failed business transaction with a company that had failed to repay a sizable loan the company had made to it was inactionable. As the Seventh Circuit explained, "There is no support for the view that Plan fiduciaries [are] required to provide all information about . . . business decisions in real time to Plan participants . . . ." 633 F.3d at 572. While a failure to disclose "an integral part of the plan" or "the actual value of plan assets" have been found to constitute breaches of fiduciary duty, there is no fiduciary duty to inform plan participants about every bad business decision that might adversely affect the value of the stock price. Id.;

15

White v. Marshall & Ilsley Corp., Case No. 10-cv-311, 2011 U.S. Dist. LEXIS 66226, *39-41(E.D. Wis., June 21, 2011); Lingis v. Motorola Inc., 649 F. Supp. 2d 861, 866 (N.D. Ill. 2009)("Creating a standard that requires Plan fiduciaries to continuously gather and disclose nonpublic information bearing some relation to the plan sponsor's financial condition would extend [ ] the statutory language [of ERISA] beyond [its] plain meaning."). The SAC does not include any new allegations to alter our opinion that the non-disclosure of information relating to these subjects does not rise to the level of a violation of ERISA.

We also agree with Defendants that Plaintiff's SAC fails to allege that any public statement was made by and Defendant with knowledge of its falsity. The ERISA standard for pleading state of mind is high, requiring an allegation that the misstatement be "deliberate" in order to support a failure to disclose claim. Howell, 633 F.3d at 571-72. In the Securities Action incorporating many of the same allegations as those included in the SAC, the Seventh Circuit held that neither the allegations regarding the Durom Cup nor those regarding Zimmer's OSP quality issues support the "contention that Zimmer's statements were false, let alone fraudulent." 679 F.3d at 954-955.[8] There, the Seventh

---

[8]Plaintiff attempts to characterize an answer that Defendant Dvorak gave to an analysts question as a lie. Defendant Dvorak was asked, "Do you currently have any issues with the FDA, any warning letters, that usually takes a few months for those to be posted, that they may be issued or 483'ed?" Defendant Dvorak responded: "We don't have any warning letters at this point." The Seventh Circuit addressed this precise statement in the Securities Action and determined that the statement was actually true and not fraudulent:

> Oral exchanges are less precise than written ones. Dvorak did not know what
(continued...)

Circuit was considering the allegations under the heightened pleading requirements of the Private Securities Litigation Reform Act, i.e., that to establish an inference of scienter the complaint must contain allegations of scienter that are "cogent and at least as compelling as any opposing inference of nonfraudulent intent." Even so, we do not read the Seventh Circuit's conclusions to have relied on this heightened standard. The Court found that the statements at issue were not false at all, a decision that necessarily precluded a finding that the statements were made with knowledge of their falsity. 679 F.3d at 955 ("even today plaintiffs have not supplied a cogent reason to think that Zimmer's statements were false, let alone knowingly false" (discussing plaintiffs' Durom Cup allegations); "once again the complaint lacks cogent support for a contention that Zimmer's statements were false, let alone fraudulent" (discussing plaintiffs' allegations related to the OSP quality issues and the Dover facility)).

In sum, Plaintiff's SAC fails to allege any misstatement or non-disclosure of information that is actionable under ERISA. Thus, we hold that leave to amend would be futile and Plaintiff's motion must be denied.

### C. Count III: Failure to Monitor

---

[8](...continued)
question was coming, had to answer off the cuff, and did not have an opportunity to review the question and edit his answer before the next question was posed. This question mentioned warnings first, and Dvorak said that Zimmer had not received any. The questioner could have followed up about 483 observations, but didn't.

679 F.3d at 956. In light of this determination, we likewise find that the exchange does not constitute an "intentionally misleading statement."

17

Plaintiff claims that the allegations in the SAC cure the deficiencies of the FAC because it sufficiently establishes that Zimmer and the Director Defendants should have informed their appointees of the undue risks posed by Zimmer Stock and removed the appointees who ignored such risks. However, our review convinces us that these allegations fail for the same reason that Plaintiff's claim for breach of the duty of imprudence failed, specifically because Plaintiff's allegations do not support a finding that any Defendant, including the appointees, had reason to have been tipped off to the fact that Zimmer's stock had become so risky or worthless that it warranted removal of the stock as an investment option. There was no "undue risk" of which the Monitoring Defendants failed to inform the appointees or for which the appointees should have been removed for having ignored it. Accordingly, there was no "failure to monitor" on the part of Zimmer or the Director Defendants for which they could be liable.[9]

## Conclusion

Because Plaintiff's SAC would ultimately succumb to a motion to dismiss, this attempt by Plaintiff to amend would be futile. Dismissal also moots Plaintiff's request for an alteration of our prior judgment. Plaintiff's Motion to Alter or Amend the Judgment and for Leave to Amend the Amended Complaint accordingly is <u>DENIED</u>, and this cause shall be <u>DISMISSED WITH PREJUDICE</u>. Final judgment shall enter accordingly.

---

[9] As in the FAC, the allegations supporting Plaintiff's conflict of interest (Count IV), co-fiduciary liability (Count V), and liability of Zimmer (Count VI) claims are derivative of those theories of relief we have already found unavailing. Thus, these derivative claims fail as well.

IT IS SO ORDERED.

Date:\_\_\_\_11/16/2012_____

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Electronically registered counsel of record